UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| M. Lindaya | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:    (IN CHAMBERS) ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE (DKT. 7)**

**I.    Introduction**

On February 5, 2026, Luis Alberto Venega-Maltez ("Petitioner") filed a petition for habeas corpus, challenging his detention at the Desert View Detention Facility. Dkt. 1 ("Petition"). On February 23, 2026, Petitioner filed a Motion for Temporary Restraining Order. Dkt. 7 ("Motion"). The relief Petitioner seeks through the Motion is a temporary restraining order ("TRO") that requires the following: immediate release from custody; an order barring Respondents from re-arresting or redetaining him unless and until he is afforded a hearing before a neutral adjudicator at which the Government must prove, by clear and convincing evidence, that he poses a danger or flight risk, and that detention is the least restrictive means of ensuring his appearance and community safety; and an order prohibiting his removal from the country or transfer outside of the detention facility while these proceedings remain pending, absent a further order of the Court. *Id.* ¶ 87.

On February 25, 2026, Respondents filed a response to the Motion, stating that Petitioner was scheduled for a bond hearing on March 3, 2026, and that receiving the bond hearing would moot Petitioner's requested injunctive relief in the Motion and Petition. Dkt. 10. The deadline for Petitioner to file a corresponding reply was February 27, 2026. Dkt. 8. None was filed by that date. Petitioner was then ordered to file any reply on or before March 4, 2026, stating his position as to whether the Petition is moot, and if so, whether the action should be dismissed. Dkt. 11.

On March 9, 2026, Petitioner filed a reply and sought leave for it to be considered notwithstanding that it was not timely filed. Dkt. 12 ¶ 2. In the reply, Petitioner states that he was denied bond at the March 3, 2026 bond hearing, and remains detained. *Id.* ¶ 5. He also argues that the Petition is not moot. *Id.* ¶ 3. On March 10, 2026, Petitioner filed a supplemental reply, which attached a copy of the decision by the Immigration Judge ("IJ") denying bond at the March 3, 2026 hearing. Dkt. 13.

On March 12, 2026, Respondents were directed to file a sur-reply, addressing the new issues raised by Petitioner in the reply. Dkt. 15. On March 13, 2026, Respondents did so. Dkt. 16. Petitioner was permitted to file response, which he timely filed on March 16, 2025. Dkt. 17.

Because both parties were provided with sufficient opportunity to address the relevant issues, including those raised by Petitioner in the reply and supplemental reply, it has been determined that it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

appropriate to consider all of the filings by the parties because they are material to the issues presented by the Petition and the Motion. Pursuant to Local Rule 7-15, it has also been determined that the Motion may be decided without hearing.

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART**.

## II.    **Factual Background**

### A.    Factual Allegations

Petitioner states that he was born in 1980, and is a native and citizen of Nicaragua. Dkt. 7 ¶ 5. He entered the United States on October 30, 2022, where he was apprehended by immigration authorities and placed into initial processing. *Id.* The Department of Homeland Security ("DHS") then determined that Petitioner would not be detained while his immigration case proceeded, and released Petitioner into the United States on humanitarian parole. *Id.* ¶ 6. Since then, Petitioner has lived continuously in the United States. *Id.* ¶ 7. He alleges that he has complied with the conditions imposed by DHS, including regular reporting for check-ins with Immigration and Customs Enforcement ("ICE"). *Id.* He has no criminal history. *Id.* ¶ 9.

During his time in the United States, Petitioner allegedly obtained employment authorization and has worked full-time as a handyman, earning a living through lawful employment. *Id.* ¶ 10. His sister resides in the United States, and he has been integrated into her household and community. *Id.* ¶ 11.

On December 16, 2025, Petitioner appeared at a routine ICE check-in, at which he was detained. *Id.* ¶ 12–13. Petitioner was provided no advance notice, explanation, or opportunity to contest his detention. *Id.* ¶ 14. He was not provided with a hearing or an individualized custody determination prior to his detention. *Id.* Petitioner was taken to Desert View Detention Facility, where he remains in custody. *Id.* ¶ 15.

### B.    The Decision by the IJ Denying Bond

The decision by the IJ denying bond at the March 3, 2026 hearing provides as follows:

> The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

>> Denied, because IN 236(a) BOND PROCEEDINGS: The respondent is a Maldonado Bautista class member. Though the Court finds the Board's decision in Yajure Hurtado properly decided, such decision was vacated under the APA, and to effectuate the order of the District Court, the Court assumes jurisdiction here. Nevertheless, though the Court finds jurisdiction, the Court determines that the respondent is a flight risk such that no bond is appropriate.

>> The Court makes this finding because the respondent entered the United States illegally less than four years ago in October of 2022. The respondent has no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

familial ties in the United States except a sister who has petitioned for him, but has only done so within the last few months, meaning that any potential adjustment (especially when considering that the respondent does not have a qualifying relative for an unlawful presence waiver) is highly speculative.

Moreover, the respondent's application for asylum and related relief, which is the respondent's sole form of relief, is speculative, where the respondent's application may be time-barred and subject to an asylum cooperative agreement. What's more, the Court does not have the application or documentation in the record to consider. Finally, in the United States, the respondent has worked illegally, which further demonstrates a disregard for the laws of the United States. The Court believes therefore, that despite a fixed address and substantial income from a friend, such a sponsor is insufficient to mitigate flight.

Dkt. 13 at 5.

### III.    Analysis

#### A.    Legal Standards

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Fed. R. Civ. P. 65(b) sets forth the standards for the issuance of a TRO. They are fundamentally the same as those that apply to a request for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The moving party has the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).

To obtain either a TRO or a preliminary injunction, the moving party must show the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of immediate or prompt relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Where the non-moving party is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

The Ninth Circuit applies a "sliding scale" approach to the requirements necessary for interim injunctive relief. Accordingly, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Likelihood of success on the merits is "the most important factor" in determining whether interim, injunctive relief is warranted. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of the hardships that tips sharply towards the plaintiff," a TRO or preliminary injunction may be warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell* ("*Cottrell*"), 632 F.3d 1127, 1135 (9th Cir. 2011). *Cottrell* determined that this "serious questions" test, which requires a lesser showing as to success on the merits than the "likelihood of success" test, continues to apply following *Winter* when two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of movant. *Id. Second*, the other *Winter* factors -- irreparable harm and the public interest -- must be established. See *Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012).

      B.      Application

Petitioner argues that a TRO ordering immediate release is warranted for two reasons. *First*, he contends that he presents neither a flight risk nor a danger to the community, and he was redetained without any showing of changed circumstances since his initial release on humanitarian parole. Dkt. 7 ¶¶ 25–37. *Second*, he contends that his redetention without notice or opportunity to be heard violated his due process rights to a pre-detention hearing. *Id.* ¶¶ 38–41.

Respondents disagree. They argue that, because Petitioner was provided with a bond hearing, the requested injunctive relief is moot. Dkt. 10 at 2. They also contend that the court lacks jurisdiction to review the IJ's bond determination under 8 U.S.C. § 1226(e), and more broadly, to review any of Petitioner's claims under 8 U.S.C. § 1252. Dkt. 16 at 6–13. In addition, they argue that the requested relief should be denied because Petitioner has failed to exhaust administrative remedies. *Id.* at 13–15.

Petitioner replies that, because he remains detained, there is still a controversy as to appropriate relief sought by the Petition and Motion. Dkt. 12 ¶ 6. Petitioner also contends that the bond hearing did not fully resolve either the Petition or the Motion. Thus, he argues that what remains pending is his challenge to the legality of his initial redetention on December 16, 2025, which occurred without a showing of changed circumstances since his release in October 2022 from his initial detention upon his entry into the United States. *Id.* ¶ 13.

      1.      <u>Jurisdiction as to the Motion and Petition</u>

           a)      8 U.S.C. § 1226(e)

8 U.S.C. § 1226(e) provides that any "discretionary judgment regarding the application of [§ 1226]", which includes release on bond pursuant to subsection (a), "shall not be subject to review." 8 U.S.C. 1226(e). Further, "[n]o court may set aside any action or decision" under § 1226 "regarding . . . the . . . denial of bond or parole." *Id.* Based on this language, Respondents argue that there is no jurisdiction to review Petitioner's challenge to the denial of bond by the IJ. Dkt. 16 at 9–10.

Respondents' argument is not persuasive. "Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (plurality opinion); *accord Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017). Rather, § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

discretion," but such discretionary decisions do not include constitutional claims or questions of law. *Id.* The Ninth Circuit has also held that mixed questions of law and fact are reviewable. *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024) (review of the BIA's "dangerousness" determination is reviewable for abuse of discretion). Further, § 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law*." Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (quoting *Singh*, 638 F.3d at 1202).

Petitioner does not seek review of a purely discretionary judgment. Rather, he seeks review of whether under the constitution he was afforded sufficient process before his redetention. These are questions of law that are not precluded by § 1226(e).

> b)    8 U.S.C. § 1252(g)

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Respondents contend that, under the terms of this statute, there is no jurisdiction in this action to consider Petitioner's claims to the extent that they "stem from his detention during removal proceedings." Dkt. 16 at 11. Respondents contend that this detention "[arose] from the decision to commence such proceedings against him." *Id.*

The Supreme Court has explained that the jurisdictional limits imposed by Section 1252(g) are "narrow," and apply only to the "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (construing the jurisdictional bar of Section 1252(g) as limited to "three discrete actions" and explaining that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings"). The Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Moreover, § 1252(g) only bars review of discretionary decisions. *See Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated."). That is because § 1252(g) is a "discretion-protecting provision," which is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | | Date | March 24, 2026 |
|---|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | | |

Petitioner does not challenge any of the three specific discretionary actions identified in § 1252(g). Thus, he does not seek relief based on a challenge to the decision to "commence proceedings," to the "adjudicat[ion]" of his case, or the "execution" of any corresponding removal order. Instead, he challenges his redetention as one that violated his rights to due process. Section 1252(g) does not preclude a district court from reviewing a challenge to the allegedly unlawful detention of a noncitizen, which is the issue presented in the Petition and Motion.

c)      8 U.S.C § 1252(b)(9)

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Respondents contend that § 1252(b)(9) precludes jurisdiction in this action because "*any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process[.]" Dkt. 16 at 12 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). Under § 1252, a petition for review may only be heard by a federal Circuit Court. 8 U.S.C. § 1252(a)(5). Respondents argue that, because Petitioner's detention "arises from DHS's decision to commence removal proceedings," this Court lacks jurisdiction over the action. *Id.*

Respondents' position is unpersuasive. *Jennings* held that § 1252(b)(9) is not a jurisdictional bar where a petitioner "[is] not asking for review of an order of removal; . . . challenging the decision to detain them in the first place or to seek removal; or . . . challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294. The Ninth Circuit has also clarified that "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (citing *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) ("Ancillary determinations made outside the context of a removal proceeding, however, are not subject to direct review.")).

Petitioner's challenge to the Government's decision to redetain him after having previously released him on parole is a claim that is "collateral" to, and not directly arising from, the removal process. *See id.* Rather than challenging the Government's decision to detain him when he was placed in removal proceedings "in the first place" in 2022, *Jennings*, 583 U.S. at 294, Petitioner contests the constitutionality of a different agency action: taking him back into custody, without changed circumstances, a pre-detention hearing, or notice or opportunity to respond to the revocation of his parole. Accordingly, the jurisdictional bar of § 1252(b)(9) does not apply. *See V.S.P.H. v. Soto*, No. 25-CV-18835, 2026 WL 371162, at *2 (D.N.J. Feb. 10, 2026) (Section 1252(b)(9) does not preclude review of a claim that the Government lacks authority to treat a prior order of supervision as terminated and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

detain the petitioner without complying with its own regulations governing the termination of that order. Such a claim is "about the legality of [Petitioner's] detention, not a request to review the merits of a removal proceeding.").

> 2. <u>Mootness</u>

A federal habeas claim is moot when it cannot be redressed by the issuance of a writ of habeas corpus. This occurs under two circumstances: (1) the petitioner has received the relief requested in the petition; or (2) the court is unable to provide the petitioner with the relief sought. *Spencer v. Kemna*, 523 U.S. 1, 8 (1998).

> a) Requested Relief

As noted, Respondents argue that the relief Petitioner requested has already been provided because Petitioner received a bond hearing under § 1226(a). Dkts. 10, 16. However, the bond hearing did not address Petitioner's primary claims. The Petition and Motion seek immediate release based on the claim that Petitioner's redetention on December 16, 2025, without notice, an opportunity to be heard, or a showing of changed circumstances since his initial release in 2022, violated Petitioner's due process rights. A bond hearing provided two months after that redetention does not moot his claims because "[a]ny subsequent bond hearing 'does not sufficiently address the lawfulness of petitioner's redetention in the first place.'" *Gonzalez v. Chestnut*, No. 26-CV-1198, 2026 WL 473059, at *2 (E.D. Cal. Feb. 19, 2026) (citing *Hernandez v. Lyons*, No. 25-CV-5376, 2025 WL 3191822, at *6 (C.D. Cal. June 18, 2025)). Because Petitioner's claims concerning the lawfulness of his redetention have not been adjudicated, this element of the relief requested in the Petition and Motion is not moot.

Respondents cite two district court cases in support of their position that the Petition is moot due to the bond hearing. Dkt. 10 at 2. Both are distinguishable. *Gonzales v. Noem*, No. 25-CV-2054, granted the petitioners' request for a TRO that they be provided with individualized bond hearings. No. 25-CV-2054 Dkt. 12. When Petitioners later sought a preliminary injunction ("PI") preventing redetention, the court denied the PI motion as moot because "Petitioners did not seek such relief in their Petition or TRO" and the relief requested, *i.e.*, the bond hearings, had already been provided. *Id.* Dkt. 16 at 2. Petitioner here has sought more than a bond hearing. He seeks a TRO requiring his immediate release based on his detention through an alleged violation of his rights to due process, and precluding his redetention without a subsequent bond hearing.

In support of the Motion, Petitioner contends that he would have been entitled "at minimum" to a bond hearing at which the Government bears a burden by clear and convincing evidence to show that he is not a flight risk or danger to the community. *See* Dkt. 7 ¶ 62. Respondents were directed to address what burden of proof the IJ applied at the bond hearing, and on which party. Dkt. 15. Respondents replied that the IJ's "decision does not clearly state what burden was used, or where the burden was placed" but that it provides "clear facts and reasoning behind the flight risk determination." Dkt. 16 at 6. It is unclear whether the Government bore a burden of clear and convincing evidence at the bond hearing. This is a question of law as to what legal standard was appropriate to apply, and whether that legal standard was applied. *See Wilkinson v. Garland*, 601 U.S. 209, 217 (2024) ("the application of a legal standard to undisputed or established facts" is a question of law). Because constitutional challenges and questions of law are not precluded from review, even in the context of a § 1226 bond

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

hearing, it has not been established that Petitioner was provided all of his requested relief thereby making his Petition moot. *See Singh*, 638 F.3d at 1202; *Martinez*, 124 F.4th at 783–84.

Respondents also rely on *Zaragoza Mosqueda v. Noem*, No. 25-CV-2304. That case also held that a request for a PI was moot after the court had granted the petitioners' request to receive bond hearings. No. 25-CV-2304 Dkt. 15 at 2. As noted, the Petition in this action is not limited to a demand for a bond hearing. Further, Petitioner was released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to the community. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("Even assuming arguendo that the post-detention bond hearing provided under section 1226(a) provides constitutionally sufficient process for those noncitizens who have never previously been detained and released by DHS, [Petitioner's] circumstance is different. Her release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").

> b) Ability to Provide Relief Sought

"Once a constitutional violation has been found, a district court has broad powers to fashion a remedy." *Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir. 2000). If procedural due process required a hearing prior to Petitioner's initial redetention, but this process was not provided, a custody redetermination hearing some months after Petitioner has been detained does not entirely rectify the alleged constitutional violation. *See Barberic v. City of Hawthorne*, 669 F. Supp. 985, 993 (C.D. Cal. 1987) ("the availability of post-deprivation procedures cannot 'cure' the due process violation") (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)). Further, if a showing of changed circumstances was required to redetain Petitioner, his rights would have been violated if no such showing was made before his redetention.

"[T]he purpose of habeas remedies is to 'put the defendant back in the position he would have been in if the [constitutional] violation never occurred.'" *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (quoting *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir.2003)). Because the Court may order relief to remedy the alleged constitutional violation, which could include an order requiring Petitioner's release, neither the Motion nor the Petition is moot.

> 3. Administrative Exhaustion

Administrative exhaustion is also not required. "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d at 988. Generally, prudential exhaustion may be required where the following factors are met: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted).

Even if the *Puga* factors weigh in favor of prudential exhaustion, exhaustion may be waived if the petitioner demonstrates one of the following factors, identified in *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004), applies: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Even if it were assumed that the *Puga* factors apply, as Respondents contend, Dkt. 16 at 13–14, Petitioner is excused from exhausting administrative remedies under *Liang* because further administrative proceedings would not address the issue presented by the Motion. Again, Petitioner is not challenging the decision by the IJ to deny bond. Rather, he contends that his redetention was constitutionally deficient. "An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)). For procedural due process claims, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." *Id.* at 1135 (quoting *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995)). Any appeal Petitioner would make to the Board of Immigration Appeals ("BIA") would only be a review of the determination by the IJ at the bond hearing. *See* 8 CFR § 1003.1(d)(3) (scope of review for the BIA). It would not address the propriety of Petitioner's redetention, which concerns the constitutionality of an agency action prior to the bond hearing. Because this claim is not within the jurisdiction of the BIA, requiring administrative exhaustion would be futile.

        4.      <u>Likelihood of Success on the Merits</u>

Petitioner advances two principal arguments to support his claim that his constitutional rights were violated. *First*, he contends that his previous release in October 2022, should not have been revoked absent a showing of materially changed circumstances, Dkt. 12 ¶ 10–12. *Second*, he argues that he should have received a pre-deprivation hearing at which the Respondents showed by clear and convincing evidence that his detention was necessary. *Id.* ¶ 13.

        a)      Procedural Due Process

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).

Petitioner was initially detained upon his entry into the United States, then released on "humanitarian parole," apparently under 8 U.S.C. § 1182(d)(5). *See* Dkt. 12 ¶ 6. This statute provides that noncitizens may be paroled into the country "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5). The release of the noncitizen from custody requires the noncitizen to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Thus, Petitioner's release on humanitarian parole necessarily required a determination by the government that he was neither a flight risk nor a danger to the community. *Pinchi*, 792 F. Supp. 3d at 1034.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | | Date | March 24, 2026 |
|---|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | | |


"Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* at 1032 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). District courts in this Circuit have found that "non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." *Chavarria v. Chestnut*, No. 25-CV-1755, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases).

To determine the procedures that are sufficient to protect a constitutional liberty interest, the *Mathews* test balances the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Each of these factors supports Petitioner's claimed right to a pre-deprivation hearing, *i.e.,* one prior to detention, at which the Government bears the burden by clear and convincing evidence that he is a flight risk or danger to the community.

As to the first factor, Petitioner has a significant private interest in remaining out of custody. Since Petitioner was released in 2022, he has lived continuously in the United States for more than three years. Dkt. 7 ¶ 3. As noted, Petitioner claims to have been gainfully employed. *Id.* ¶ 10; Dkt. 13 at 15. Petitioner also contends that he has a sister in the United States, whose community he has integrated into. *Id.* ¶ 11. These circumstances support his private liberty interest. See *Diaz v. Kaiser*, No. 25-CV-5071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (a noncitizen had a substantial private interest in remaining out of custody so that he could "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life" (citing *Morrissey*, 408 U.S. at 482)); *Pinchi*, 792 F.Supp.3d at 1034–35 ("The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention.").

With respect to the second factor, "the risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." *Chavarria*, 2025 WL 3533606, at *4. This risk is heightened in cases where, as here, the noncitizen has complied with all of the requirements of his parole for years and has no criminal record. Dkt. 7 ¶ 9; *see Pinchi*, 792 F.Supp.3d at 1035. Further, a custody redetermination hearing at some point in time after redetention is not sufficient to mitigate the risk of erroneous deprivation. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025); *Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-421, 2026 WL 280478, at *4 (S.D. Cal. Feb. 3, 2026) ("By releasing Petitioner on bond in 2022, immigration officers determined that she was neither a flight risk nor a danger to her community. Respondents have not alleged that there has been a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

change in circumstance since Petitioner's 2022 release, other than the dismissal of Petitioner's immigration proceedings in 2023. Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk." (citations omitted)).

With respect to the third factor, although the Government has a strong interest in enforcing immigration laws, any interest in detaining Petitioner without a hearing before redetention is low. Where a noncitizen has been released following a determination that the person presents no flight risk or danger to the community, and where the person has complied with the conditions of release, courts have determined that this *Mathews* factor weighs in favor of providing a hearing before the noncitizen is redetained. *See Pinchi*, 792 F.Supp.3d at 1036; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("the government's interest in re-arresting [petitioner] without a hearing before an [immigration judge] is low" where the petitioner "has strictly complied with all the requirements of his release" for a year and a half). If anything, "a pre-deprivation hearing could reduce administrative costs by potentially avoiding an erroneous deprivation of liberty, which would save the costs of unnecessary detention." *Fernandez*, 2026 WL 136229, at *6 (citing *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025)). "Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Id.* (citing *Pinchi*, 792 F. Supp. 3d at 1036).

Each *Mathews* factor supports the conclusion that Petitioner was entitled to a hearing before his redetention. Further, at this hearing the Government would have the burden to show that his redetention was necessary. Civil immigration detention is intended to be "nonpunitive in purpose and effect," and is justified in "narrow" circumstances where a noncitizen presents either a flight risk or danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where the Government has sought to redetain noncitizens previously released on humanitarian parole, courts have determined that the burden of proof on the Government is to demonstrate by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk. *See Ramazan M. v. Andrews*, No. 25-CV-1356, 2025 WL 3145562, at *9–10 (E.D. Cal. Nov. 10, 2025); *Padilla v. Bowen*, No. 25-CV-10780, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025); *R.A.N.O. v. Wofford*, No. 25-CV-1535, 2026 WL 40507, at *8 (E.D. Cal. Jan. 6, 2026); *Fernandez*, 2026 WL 136229, at *7.

Because Petitioner was detained without any notice or hearing, and was held in custody for more than two months before he received a bond hearing, he is likely to succeed on his claim that his procedural due process rights were violated.

 b) Redetention Absent Changed Circumstances

Petitioner has also shown that there are serious questions as to whether the Government should have shown changed circumstances to warrant his redetention. The statutory and regulatory framework governing humanitarian parole permits termination of parole if the noncitizen has departed from the United States, if the period for which parole was authorized has expired, or upon written notice. 8 C.F.R. § 212.5(e). Notwithstanding the breadth of authority to revoke parole, the Ninth Circuit has suggested that a showing of changed circumstances may be required to redetain a noncitizen who has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

previously been released. *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021).[1] The Ninth Circuit has also determined that a district court did not abuse its discretion in fashioning a preliminary injunction requiring a hearing at which the Government was required to show changed circumstances in order to justify the redetention of noncitizens previously released on bond. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018). Those decisions referred to a BIA case recognizing that, "where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981).

*Matter of Sugay* did not directly address whether a change in circumstance was required to justify redetention of a noncitizen previously released by a DHS officer, rather than by an immigration judge on bond. Nonetheless, DHS has "follow[ed] Matter of Sugay in situations . . . where a previous release determination was made by DHS. Thus, DHS generally only re-arrest[ed] an alien pursuant to § 1226(b) after a material change in circumstances." Federal Defendants' Supplemental Brief at 1, *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017).

For these reasons, there are serious questions as to whether Petitioner was entitled to a determination that there was a material change in circumstances prior to his redetention.

       5.       <u>Irreparable Harm</u>

It is well established that unlawful detention constitutes irreparable harm. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Ninth Circuit has also identified "irreparable harms imposed on anyone subject to immigration detention," including less access to medical care in detention facilities, economic burdens on detainees and their families, and harms to children whose parents are detained. *Hernandez v. Sessions*, 872 F.3d at 995.

Petitioner is currently detained at the Desert View Detention Facility. Dkt. 7 ¶ 15. Accordingly, this factor weighs in favor of granting injunctive relief.

---

[1] Several district courts have required a change in circumstances to justify redetention of a noncitizen. *See Fernandez v. Semaia*, No. 25-CV-3412, 2026 WL 136229, at *4 (C.D. Cal. Jan. 13, 2026) (the Government violates a noncitizen's protected liberty interest if it "revok[es] Petitioner's parole without a parole violation or a showing of changed circumstances as to his risk of flight or danger"); *Ortega v. Noem*, No. 25-CV-1663, 2025 WL 3511914, at *2 (E.D. Cal. Dec. 8, 2025) ("for Petitioner's parole revocation to be constitutionally adequate, the government must show that there has been changed circumstances warranting his re-arrest"); *Qazi v. Albarran*, No. 25-CV-2791, 2025 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being redetained except upon a showing of a material change in circumstances.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

6.      Balance of Equities and the Public Interest

The balance of equities and public interest are factors that "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government [ ] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id.* (quotation and citations omitted).

Because Petitioner has shown a likelihood of success on the merits, this factor also weighs in favor of granting injunctive relief.

\*                    \*                    \*

Because all of the *Winter* factors support the requested relief, it is warranted.

C.      Appropriate Relief

A TRO preserves the "status quo," which is the "last, uncontested status which preceded the pending controversy." *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "To return to the status quo – the last uncontested status which preceded the pending controversy," it is appropriate to "release Petitioner under the same conditions he was released previously." *Garcia v. Andrews*, No. 25-CV-1884, 2025 WL 1927596, at *6 (E.D. Cal. July 14, 2025). Accordingly, immediate release of Petitioner is warranted. Respondents shall not redetain Petitioner without providing him with the necessary due process rights, which include notice, an opportunity to be heard, and a determination by neutral decision-maker that Petitioner should be redetained under the standards that apply given the basis of his prior release on parole in October 2022.

Under this standard, the March 3, 2026 bond hearing before the IJ does not warrant a different outcome. Thus, Petitioner had the right to notice and an appropriate hearing process prior to his redetention. If he had been provided with those rights to respond to the relevant issues, he may not have been redetained. For similar reasons, even if he were redetained after being provided with those rights, the notice and opportunity for him to respond may have affected his ability to address parallel issues at the bond hearing that could have affected its outcome.

With respect to future proceedings Petitioner has not shown the basis for his request that he not be deported while these proceedings remain pending. Accordingly, that request is **DENIED**; provided, however, Respondents are required to follow all applicable processes and procedures under law and as stated in this Order to redetain or remove Petitioner, including regulations that prohibit removal to any country where a noncitizen's life or freedom would be threatened. 8 C.F.R. § 208.16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-cv-00525-JAK (AGRx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Luis Alberto Venega-Maltez v. Fereti Semaia et al. | | |

### IV.      No Bond Is Necessary

Fed. R. Civ. P. 65(c) requires that, prior to granting injunctive relief, a movant pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted).

Based on an application of these standards, no bond is required. It has not been shown that Respondents will incur any significant cost due to the relief that has been ordered, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

### V.      Conclusion

For the reasons stated in this Order, the Motion is **GRANTED-IN-PART**. Petitioner shall be immediately released from ICE custody. Upon Petitioner's release from custody, his request for an order that he not be transferred from to another detention center or from the Central District of California is **MOOT**. Respondents are temporarily **ENJOINED AND RESTRAINED** from redetaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances since Petitioner's release in October 2022, justifying Petitioner's redetention.

Respondents are ordered to show cause why a preliminary injunction should not be issued. *See* C.D. Cal. L. R. 65-1. Respondents shall file any written response to the Order to Show Cause ("OSC") no later than March 30, 2026. Petitioner shall file any reply no later than April 3, 2026. If either or both parties elect to rely on the current briefing with respect to the OSC, they may do so, and should file a corresponding notice on or before the due date for their respective briefs. Based on a review of the briefing on the OSC, a determination will be made whether to schedule a hearing on the OSC or to take the matter under submission.

On or before March 26, 2026, Respondents shall file a notice certifying compliance with the provisions of this Order and injunction.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      LC1